## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| In re: | Chapter 15 |
|---|---|
| Kiener Maschinenbau GmbH | Case No. 24-56470-JWC |
| **Debtor in a Foreign Proceeding.** | |

## NOTICE OF APPEAL

COME NOW Patrick Wahren ("Wahren"), in his capacity as the German court-appointed and authorized foreign representative (the "Foreign Representative") for Kiener Maschinenbau GmbH ("Kiener" or "Debtor"), and hereby appeals under 28 U.S.C. § 158(a) to the United States District Court for the Northern District of Georgia that certain Memorandum Opinion and Order entered in this case on September 17, 2024 (Doc. No. 37) (hereinafter, the "Order"), whereby the Bankruptcy Court granted the Motion of Phyllis Ann Bass, Individually, and as Executor of the Estate of Roy Glenn Bass (Deceased) (the "Bass Plaintiffs") for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (Doc. No. 12) (the "Stay Relief Motion"). A true and correct copy of the Order is incorporated herein and attached hereto as **Exhibit "A"**.

The Order granted the Stay Relief Motion and allowed the Bass Plaintiffs to continue with that certain litigation pending between the parties styled *Bass v.*

*LACOM GmbH, Kiener Maschinenbau GmbH, et al.,* Civil Action No. 1:21-cv-00144-VMC, in the United States District Court for the Northern District of Georgia (the "District Court Litigation"). The Order specifically provides, with respect to the District Court Litigation, that upon conclusion, the Bass Plaintiffs can seek to obtain recovery against any insurance policy of the Debtor. The pertinent language of the Order is as follows:

> **IT IS FURTHER ORDERED** that Mrs. Bass' Motions for Stay Relief are **GRANTED IN PART** as set forth herein. The automatic stay under 11 U.S.C. § 362(a) is hereby modified to allow the District Court Litigation to continue to conclusion, including all appeals, and Mrs. Bass pay pursue collection efforts on any judgment obtained in the District Court Litigation solely to obtain recovery against any insurance policy of the Debtors that covers Mrs. Bass's claims. Mrs. Bass may not pursue recovery against the German insolvency estates without further order of this Court.

Order at 29 (emphasis in original).

The parties to the Order appealed from and the name and address of their respective attorneys is as follows:

| | |
|---|---|
| Appellant: | Kiener Maschinenbau GmbH |
| Attorneys for Appellant: | Cameron M. McCord |
| | Adam E. Ekbom |
| | Jones & Walden, LLC |
| | 699 Piedmont Avenue NE |
| | Atlanta, Georgia 30308 |

Telephone:  (404) 564-9300
Facsimile:    (404) 564-9301
cmccord@joneswalden.com
aekbom@joneswalden.com
*Counsel for Debtor and*
*Foreign Representative*

Appellees:                          Phyliss Ann Bass, Individually, and as
                                    Executor of the Estate of Roy Glenn
                                    Bass (Deceased)

Attorney for Appellees:             Louis G. McBryan
                                    McBryan, LLC
                                    6849 Peachtree Dunwoody Road
                                    Building B-3, Suite 100
                                    Atlanta, Georgia 30328
                                    Telephone: (678) 733-9322
                                    lmcbryan@mcbryanlaw.com
                                    *Attorney for Movants*

*[Signatures appear on the following page.]*

Respectfully submitted this 30th day of September, 2024.

**JONES & WALDEN LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
Adam E. Ekbom
Georgia Bar No. 919724
699 Piedmont Ave NE
Atlanta, Georgia 30308
Telephone:   (404) 564-9300
Facsimile:   (404) 564-9301
cmccord@joneswalden.com
aekbom@joneswalden.com
*Counsel for Debtor and*
*Foreign Representative*

**<u>Exhibit "A"</u>**

**IT IS ORDERED as set forth below:**

**Date: September 16, 2024**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 24-56470-JWC |
| KIENER MASCHINENBAU GmbH, | CHAPTER 15 |
| Debtor. | |
| IN RE: | CASE NO. 24-56473-JWC |
| LACOM GmbH, | CHAPTER 15 |
| Debtor. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are two matters in each of these two chapter 15 cases. First

are petitions for recognition (Kiener Doc. Nos. 1 and 4; LACOM Doc. Nos. 1 and 4)[1]

(the "Petitions") filed by Kiener Maschinenbau GmbH and LACOM GmbH (the

---

[1] Citations to docket numbers in the two chapter 15 cases will be to "Kiener Doc. No. __" for case
number 24-56470 and "LACOM Doc. No. __" for case number 24-56473.

1

"Debtors"). Both Debtors seek recognition of their respective insolvency proceedings pending in Germany (the "German Insolvency Proceedings") as foreign main proceedings under § 1517 of the Bankruptcy Code[2] and related relief. Phyllis Ann Bass, individually and as executor of the Estate of Roy Glenn Bass, deceased ("Mrs. Bass") opposes recognition of the German Insolvency Proceedings.

If the Court recognizes the German Insolvency Proceedings as foreign main proceedings, then the automatic stay under § 362(a) goes into effect as to the Debtors and their property in the United States. *See* 11 U.S.C. § 1520(a)(1). In that case, the Court must decide the second matter: two identical motions for relief from the automatic stay filed by Mrs. Bass (Kiener Doc. No. 12; LACOM Doc. No. 11) (the "Stay Relief Motions"). Mrs. Bass requests stay relief to continue a pending lawsuit against the Debtors in the United States in which she asserts wrongful death and related tort claims for the death of her husband. She requests stay relief to pursue her claims to judgment and then pursue recovery on any such judgment from the Debtors' insurance carrier and the Debtors' German insolvency estates. For the reasons discussed below, the Court will recognize the German Insolvency Proceedings as foreign main proceedings but grant Mrs. Bass stay relief to liquidate her claims in the United States and pursue recovery on any judgment obtained against the Debtors' insurance carrier. She may not, however, pursue any collection against Debtor's German insolvency estates without further relief from this Court.

---

[2] 11 U.S.C. 101 *et seq*. All statutory references are to the Bankruptcy Code unless indicated otherwise.

## I.    <u>PROCEDURAL BACKGROUND</u>

The Debtors filed their Petitions June 21, 2024. The Debtors request (1) recognition of their German Insolvency Proceedings as foreign main proceedings; (2) recognition of Arndt Geiwitz and Patrick Wahren (together, the "Administrators") as foreign representatives of LACOM and Kiener, respectively; (3) that the orders commencing the German Insolvency Proceedings be given full force and effect; (4) all relief afforded pursuant to § 1520, including imposition of the automatic stay under § 362; and (5) further additional relief under § 1521, including extending on a final basis relief requested on a provisional basis. Filing petitions for recognition under chapter 15 does not automatically impose the stay under § 362, so the Debtors also filed emergency requests to impose the stay provisionally pursuant to § 1519. The Court held a hearing on the emergency requests June 27, 2024.

Mrs. Bass filed her Stay Relief Motions the day before the emergency hearing. She objected to the emergency requests for a provisional stay, opposed recognition of the German Insolvency Proceedings, and requested relief from the stay if it is imposed. Counsel for the Debtors and Mrs. Bass appeared and made arguments at the emergency hearing. The Court granted in part and denied in part the Debtors' emergency requests for provisional stay relief by orders entered June 28, 2024 (Kiener Doc. No. 15; LACOM Doc. No. 14). The Court imposed the automatic stay provisionally only to the extent necessary to toll the running of a so-called "Holt Demand" made by Mrs. Bass. The Court denied all other provisional relief. The Court also entered orders setting the Petitions and the Stay Relief Motions for an

3

evidentiary hearing and orally set a briefing schedule. The Debtors and Mrs. Bass filed supplemental briefs in support and against the Petitions and Stay Relief Motions and submitted exhibits and witness lists in advance of the evidentiary hearing. The Court held an evidentiary hearing on the Petitions and Stay Relief Motions August 5, 2024, at which the Debtors and Mrs. Bass both put on evidence in support of their positions.

## II.  <u>FINDINGS OF FACT</u>

The Debtors were in the engineering and manufacturing industries.[3] Kiener operated in Germany since its founding in 1980 and specialized in the development and manufacture of automated machines and assembly systems for car manufacturers. LACOM, a subsidiary of Kiener, operated in Germany since its founding in 1995 and specialized in automated laminating and coating machines in the textile and flooring industries.

Mrs. Bass's husband, Roy Glenn Bass, died in 2018 from injuries sustained in an accident at work in a carpet manufacturing facility in Georgia. Mrs. Bass asserts that LACOM manufactured a machine that broke and fell on her husband, causing his death. Mrs. Bass sued the Debtors and other defendants in Georgia state court in 2020 for wrongful death and related tort claims. In 2021 a non-Debtor defendant removed that litigation to the United States District Court for the Northern District

---

[3] The Debtors' only witness at the hearing was Dr. H. Philip Esser. The Administrators retained Dr. Esser to assist them with issues of cross-border insolvency, and the Debtors offered his testimony as an expert on German insolvency law and the German Insolvency Proceedings. The Court found Dr. Esser's testimony credible and helpful, and unless otherwise indicated, the Court's findings relevant to German law and the German Insolvency Proceedings relies on Dr. Esser's testimony.

of Georgia, Case No. 1:21-cv-00144-VMC (the "District Court Litigation"), where it remains pending. The Debtors dispute liability in the District Court Litigation and have actively participated in the litigation since its inception. The Debtors have insurance coverage that has paid and continues to pay the Debtors' costs in the District Court Litigation. The insurance policy is an eroding limits policy, meaning the coverage available under the policy is reduced by the litigation expenses paid by the insurance carrier.

For reasons unrelated to the District Court Litigation, both Debtors filed insolvency proceedings in Germany in May of 2023. The German insolvency court immediately entered preliminary orders instituting preliminary protections and appointing the Administrators on a preliminary basis. Eight days later, the Debtors requested the District Court to enforce a litigation stay imposed under German insolvency law as a matter of comity. The District Court declined to act and instructed the Debtors either to inform it whether they intended to file chapter 15 cases under the Bankruptcy Code or submit further briefing explaining why the District Court should act in the absence of chapter 15 cases. The Debtors filed a brief explaining they could not answer either question posed by the District Court because of the preliminary nature of the Administrators' appointments in the German Insolvency Proceedings and continued to engage actively in the District Court Litigation. The District Court took no apparent action on the Debtors' notices or their initial request to stay the District Court Litigation as a matter of comity.

On August 1, 2023, the German insolvency court entered "Commencement Orders" in the German Insolvency Proceedings, which formally commenced the proceedings and permanently appointed the Administrators.[4] Soon after entry of the Commencement Orders, Debtors filed a notice of the Commencement Orders in the District Court Litigation and reiterated that German law imposed a litigation stay. The Debtors did not, however, request a stay in the District Court Litigation, and Discovery continued in the District Court Litigation, including the noticing of numerous depositions and filing of expert reports by the Debtors and other defendants.

Meanwhile, in August of 2023, Mrs. Bass filed claims in the German Insolvency Proceedings for €50 million. The Administrators disputed Mrs. Bass's claims because "no judgment has been entered and the District Court Litigation remains in process."[5] Although the German Insolvency Proceedings imposed a litigation stay initially, the Administrators "opened the door" for litigation to proceed when they disputed Mrs. Bass's claims. Further, German insolvency law does not consider its stay to be worldwide, and it would not have stayed the District Court Litigation in the first place.[6]

---

[4] The Debtors filed certified copies of the Commencement Orders and English translations with the Petitions. (Kiener Doc. No. 4; LACOM Doc. No. 4)

[5] Declaration of Patrick Wahren in Support of the Debtor's Chapter 15 Petition and First-Day Pleadings in Foreign Proceeding ¶ 21 (Kiener Doc. No. 3, Ex. B, and Doc. No. 32, Ex. 1); Declaration of Arndt Geiwitz in Support of the Debtor's Chapter 15 Petition and First-Day Pleadings in Foreign Proceeding ¶ 21 (LACOM Doc. No. 3, Ex. B, and Doc. No. 31, Ex. 1).

[6] The Debtors have stated in various papers and generally at the hearings that German insolvency law imposes a litigation stay, but these statements have not been supported by much explanation, development, or evidence that suggests it ever applied to the District Court Litigation. The Debtors cite to Section 87, 88, and 89 of the German Insolvency Code, but they do not provide the language of those statutes or English translations or explain how those statutes operate. They further cite to

6

The Debtors continued to participate actively in the District Court Litigation for many months after the German Insolvency Proceedings formally commenced and Mrs. Bass filed her claims. The docket in the District Court Litigation shows dozens of depositions noticed between August 1, 2023, and June, 2024. The Debtors engaged in expert discovery and filed two expert reports, participated in a mediation, and filed partial motions for summary judgment during that same time.

Following an unsuccessful mediation in the District Court Litigation, Mrs. Bass sent a settlement demand to the Debtors dated June 14, 2024, which offered to settle her claims against the Debtors for the remaining amount available under the Debtors' insurance policy so long as that amount is more than $8,000,000. This settlement demand, colloquially called a "Holt Demand" in Georgia, gave the Debtors 14 days to respond and was designed to potentially give rise to a bad faith failure to settle claim against the Debtors' insurance carrier.[7]

The Debtors filed these chapter 15 cases a week after the Holt Demand. In their emergency motions and at the emergency hearing, the Debtors focused on the need to toll the running of the Holt Demand while the Debtors and their insurance

---

section 240, sentence 1 of the German Code of Civil Procedure but again do not provide the language of the statute or much explanation other than to say "the Commencement Order interrupts and stays any litigation relating to the insolvency estate of the Debtor until such litigation is resumed pursuant to the rules applicable to insolvency proceedings." (*E.g.,* LACOM Doc. No. 23 ¶¶ 23-30.) They fail to address whether and how litigation may be resumed pursuant to applicable insolvency proceedings, and the Court concludes that the litigation stay under German insolvency law never applied to the District Court Litigation in the first place, and, in any event, the litigation stay lifted when the Administrators disputed Mrs. Bass's claims.

[7] Under Georgia law, if an insurance carrier does not agree to settle for the policy limits under certain circumstances, and a claimant obtains a judgment exceeding the policy limits, the insured may have a claim against the insurance carrier for failing to settle for the policy limits. Typically, insureds holding a bad faith claim against an insurance carrier assign it to the claimant who obtains the judgment exceeding the policy limits.

carrier sifted through the impact of German law and the German Insolvency Proceedings. The Court imposed the stay provisionally only to toll the expiration of the Holt Demand in part because Mrs. Bass raised no serious objection to a short tolling of the demand. The Court found, however, that the Debtors failed to meet their burden to impose the stay generally, including to stay the District Court Litigation provisionally. (*See* Kiener Doc. No. 15; LACOM Doc. No. 14.) The District Court Litigation remains pending at this time without a stay under the Bankruptcy Code, and, as far as this Court can tell from the evidence presented, without a stay under German insolvency law.

By the time of the evidentiary hearing on the Petitions and Stay Relief Motions, the Debtors seemed satisfied that the Holt Demand need not concern them under German law. Neither the Debtors' briefs nor their arguments and evidence at the hearing addressed the Holt Demand to any significant degree, and the real reason for filing these chapter 15 cases came into focus.

The only apparent goal of these chapter 15 cases is to stop the District Court Litigation. The Debtors have no assets in the United States to protect.[8] Although there may be other U.S. creditors, Mrs. Bass is the only creditor the Debtors notified of these chapter 15 cases. The Debtors sold their businesses in the German Insolvency Proceedings prior to filing these chapter 15 cases. They have no ongoing business operations and are winding up their affairs. The German insolvency estates have funds to make a distribution to creditors, but the Court does not know how much or

---

[8] The Debtors' only assets in the United States are the retainers held by U.S. bankruptcy counsel.

8

the amount of claims outstanding. Debtors assert that Kiener has over 1,000 creditors and LACOM has over 100, but the Court knows nothing else about the creditor body. Although the Debtors' expert could not say with any certainty given the recent nature of the German Insolvency Proceedings, the early estimated distribution to creditors is less than 5% for each estate, with one case being considerably below 5%. The Court has no indication of how much time it might take to wind up the German insolvency estates and make final distributions. The Court is not aware of any assets held by the Debtors' insolvency estates other than funds on hand from the sale of the businesses and the insurance policy covering Mrs. Bass's claims. Mrs. Bass is the only creditor whose claim is covered by the insurance policy.

The reason to stop the District Court Litigation is clear—Mrs. Bass's claims are potentially far more valuable if liquidated in the United States via jury trial than if they are liquidated in Germany, where Mrs. Bass will have no right to a jury trial. Mrs. Bass seeks tens of millions of dollars in damages in the District Court Litigation; the Debtors' expert on German law testified that the value of the claims if liquidated in Germany are likely to be in the range of thousands of dollars instead of millions.

It seems clear that Mrs. Bass must, at some point, go to a German court to recover on a U.S. judgment against the insurance carrier or the Debtor's German insolvency estates. Typically, creditors file a declaratory judgment action in a German civil court once a dispute is raised to a claim in an insolvency proceeding. The declaratory judgment action is not filed in the German insolvency court or heard by an insolvency judge but is filed in a regular civil court and proceeds like any civil

9

action in a German court. An average amount of time for a declaratory judgment action to conclude would be 1.5 to 2 years, not including appeals and assuming the matter is not settled.

The Debtor's expert testified that a foreign judgment can be recognized or domesticated in Germany and enforced against the Administrators according to a separate proceeding in which a German court would consider several factors to determine whether to recognize the foreign judgment but without considering the underlying merits of the claim itself. The first factor is that the judgment is final. The second factor is that the issuing court has international jurisdiction. The third factor is that the defendant had the ability to defend itself, in particular that the documents initiating the case were properly served on the defendant. The fourth requirement is that a judgment in Germany has not already resolved the matter. The fifth factor is that the judgment does not violate German public policy. The final factor is reciprocity, which is generally accepted between the U.S. and Germany.

The Debtors and Administrators are adamant that any effort to domesticate a U.S. Judgment in Germany will be opposed on numerous procedural and substantive bases, which could add years of unnecessary litigation—four years or more if fully appealed according to the Debtors' expert. The Debtors' expert testified that German law may deem a U.S. judgment to be contrary to German policy if, for example, punitive damages or excessive compensatory damages are awarded. Mrs. Bass's counsel noted that no punitive damages are being sought in the District Court Litigation, and the Debtors' expert testified that excessive damages would have to be

extreme to be invalidated. The Debtors also made several arguments related to international jurisdiction and procedural issues in their briefs, but these arguments were not well-developed or supported by evidence and appear to be hurdles to overcome instead of preclusive barriers. The Court's takeaway is that a judgment in the District Court Litigation *could* be invalidated by a German court on certain public policy grounds, but that result is far from certain.

If the District Court Litigation is stayed indefinitely, Mrs. Bass will have to *start over* in Germany after four years of District Court Litigation in which the Debtors have actively participated. Dozens of depositions have been taken, experts have been retained and reports filed, motions to exclude the expert reports are briefed and pending, and the Debtors' motion for partial summary judgment is fully briefed. Much of that activity occurred after the Commencement Orders with the full participation of the Administrators. Once the District Court rules on the pending motions, the matter is ready for trial. Although some witnesses are in Germany and other European countries, most of the witnesses are in Georgia. The accident and Mr. Bass's death occurred in Georgia. If forced to liquidate her claims in Germany, Mrs. Bass will have to hire new counsel in Germany, start the litigation afresh, face substantial evidentiary hurdles relative to witnesses and events that occurred in Georgia, and she will lose her right to a jury trial.

One more key fact mentioned above but worth repeating is that the Debtors' insurance carrier is paying for the costs of litigation in the District Court. The insurance carrier has been involved in the decision to file these chapter 15 cases, and

11

it is clear enough to the Court that the primary driver behind these chapter 15 cases

and the Debtors' desire to have this case decided in Germany is the insurance carrier,

which would be the primary beneficiary of any stay of the District Court Litigation.

Against these facts the Court must decide the ultimate question in these cases:

should Mrs. Bass liquidate her claims in the United States or Germany. Procedurally,

the Court must first address whether to recognize the German Insolvency

Proceedings as foreign main proceedings. If they are recognized, then the Court must

decide whether to grant stay relief under § 362(d) to allow the District Court

Litigation to proceed.

### III.   <u>CONCLUSIONS OF LAW</u>

#### A. Jurisdiction and Venue

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157

and 1334. Recognition of a foreign proceeding and other matters under chapter 15 of

the Bankruptcy Code are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).

Motions for relief from the automatic stay are core proceedings pursuant to 28 U.S.C.

§ 157(b)(2)(G). Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) or (2).

#### B. The German Insolvency Proceedings Are Foreign Main Proceedings

Bankruptcy Code § 1517 provides that an order recognizing a foreign

proceeding shall be entered if (1) the foreign proceeding is a foreign main proceeding

or foreign nonmain proceeding; (2) the foreign representative seeking recognition is

a person or body; and (3) the petition for recognition meets the requirements of §

1515. 11 U.S.C. § 1517(a). The Debtors bear the burden of satisfying each

requirement under § 1517. *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 194 (Bankr. S.D.N.Y. 217) ("'recognition is not a 'rubber stamp exercise," and the burden rests on the foreign representative to prove each of the requirements of [s]ection 1517." (quoting *In re Creative Fin., Ltd. (In Liquidation)*, 543 B.R. 498, 514 (Bankr. S.D.N.Y. 2016))).

First, the German Insolvency Proceedings are foreign main proceedings as defined in § 1502(4).[9] Other courts have concluded that German insolvency proceedings constitute foreign proceedings, and Mrs. Bass offers no argument to the contrary. *See, e.g., In re Qimonda AG*, 462 B.R. 165, 168, 183-84 (Bankr. E.D. Va. 2011); *Jaffe v. Samsung Elecs. Co., Ltd.*, 737 F.3d 14, 19-20 (4th Cir. 2013); *In re Condor Flugdienst GmbH*, 627 B.R. 366, 370-71 (Bankr. N.D. Ill. 2021). Further, the declarations of the Administrators and testimony of Dr. Esser establish that the Debtors were headquartered in Germany along with their management and primary assets prior to filing the German Insolvency Proceedings. The Debtors' evidence thus establishes that Germany is the Debtors' "center of main interest," which is often equated to the concept of a debtor's "principal place of business." *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006). Again, Mrs. Bass offers no evidence or argument that Germany is not the Debtors' center of main interests, and the Court easily concludes that it is. Thus, the German Insolvency Proceedings are foreign main proceedings.

---

[9] "'[F]oreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).

Second, the Administrators are foreign representatives as defined in §
101(24).[10] The Commencement Orders appoint the Administrators to administer the
reorganization or liquidation of the Debtors' affairs in the German Insolvency
Proceedings, and the Administrators are both individuals.  Mrs. Bass again does not
dispute this conclusion.

Third, the petitions meet the requirements of § 1515 and therefore comply with
§ 1517(a)(3). The Administrators both filed signed petitions for recognition using
Official Form 401 and filed certified copies of the Commencement Orders (and
English translations). Again, Mrs. Bass does not challenge that the Debtors or
Administrators have satisfied the requirements of § 1515, and the Court easily
concludes that the requirements are satisfied.

Finally, § 1517(b) provides that the foreign main proceeding shall be
recognized—"(1) as a foreign main proceeding if it is pending in the country where
the debtor has the center of its main interests . . . ." This language copies verbatim
the definition of "foreign main proceeding" in § 101(23), and the Court already
concluded the Debtors meet this requirement. Thus, the Debtors satisfied each of the
requirements under § 1517 to recognize the German Insolvency Proceedings as
foreign main proceedings, and Mrs. Bass does not really challenge that the Debtors
meet these requirements.

---

[10] "'[F]oreign representative' means a person or body, including a person or body appointed on an
interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation
of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. §
101(24).

## C. Recognition Is Not Manifestly Contrary to Public Policy

Mrs. Bass's arguments against recognition rely primarily on § 1506, which allows a court to refuse recognition of a foreign proceeding if such recognition "would be manifestly contrary to the public policy of the United States." 11 U.S.C. §§ 1506; 1517. This exception, however, is narrowly construed and restricted to "the most fundamental policies of the United States." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 139 (2d Cir. 2013) (quoting H.R. Rep. No. 109-31, pt. 1, at 109 (2005)). *See also In re OAS S.A.*, 533 B.R. 83, 104 (Bankr. S.D.N.Y. 2015) ("[E]ven the absence of certain procedural or constitutional rights will not itself be a bar under [section] 1506." quoting *Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de CV)*, 701 F.3d 1031, 1069 (5th Cir. 2012)).

Mrs. Bass does not argue that German insolvency proceedings generally are manifestly contrary to the public policy of the Unites States. Instead, she argues that the unique facts of her case make recognition of these German Insolvency Proceedings contrary to public policy. Specifically, she argues that she will be deprived of her constitutional right to a jury trial and otherwise prejudiced by having to liquidate her claims in Germany. She also argues that these chapter 15 cases were filed solely for a litigation advantage to benefit the insurance carrier.

The Court need not decide whether depriving Mrs. Bass of a right to a jury trial would violate a "most fundamental policy of the United States"[11] as it is the

---

[11] At least one court has concluded that depriving personal injury tort litigants of a right to a jury trial and requiring them to liquidate their claims pursuant to a foreign insolvency proceeding is not manifestly contrary to United States public policy. *See In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 335–36 (S.D.N.Y. 2006)).

automatic stay under the Bankruptcy Code that would deprive her of that right, not the German Insolvency Proceedings.[12] It is difficult to say that the Bankruptcy Code's automatic stay is manifestly contrary to United States public policy. *See In re ABC Learning Centres Ltd.*, 445 B.R. 318, 335-36 (Bankr. Del. 2010) ("the Debtors are not receiving protections beyond what debtors in U.S. bankruptcy proceedings receive. The fact that these protections are disadvantageous . . . does not mean that they violate U.S. public policy"). To the extent imposition of the automatic stay would prejudice Mrs. Bass in this particular case, those issues can be managed within the confines of relief from the automatic stay under § 362(d), which bankruptcy courts deal with routinely and which affords ample flexibility for courts to fashion relief that accounts for the interests of both the Debtors and Mrs. Bass.

Although the Court mostly agrees that the Debtors' insurance carrier is the primary driver and beneficiary of these chapter 15 cases, and that protection of a Debtors' insurance carrier alone is not a legitimate basis to file a chapter 15 case or to impose the automatic stay, the Court disagrees that these cases serve no legitimate purpose. The Court finds some merit to the Debtors' arguments that continuing the District Court Litigation could increase litigation expenses because of the German Insolvency Proceedings, which increases the likelihood of a judgment above the policy limits to the detriment of the insolvency estates. Further, Mrs. Bass seeks complete

---

[12] The evidence before the Court is that there is no stay currently in place that prevents the District Court Litigation from proceeding. If there is a stay in place under German law, or other matters of German policy or law might ultimately invalidate a U.S. Judgment or preclude its domestication or recovery in Germany, that is a risk Mrs. Bass and her counsel must assess in pursuing a judgment in the District Court Litigation. This Court has no power over the enforcement of a U.S. judgment in Germany, regardless of whether the Court recognizes the German Insolvency Proceedings.

stay relief to pursue recovery against not only the insurance carrier but also the German insolvency estates through whatever means available, and Mrs. Bass's counsel testified that he has not yet considered limiting collection efforts to the insurance policy. The interplay of 1506, 1520, and 1521 gives courts "broad latitude to mold relief to meet specific circumstances." *In re Tri-Cont'l Exch. Ltd.*, 349 B.R. at 636-37 (quoting H.R. Rep. No. 109-31, at 116 (2005)). Section 1520 incorporates all of § 362, and the Court finds stay relief to be the appropriate way to mold relief to meet the specific circumstances of these cases.

The Court will grant the Debtors' Petitions and recognize the German Insolvency Proceedings as foreign main proceedings. The automatic stay therefore applies with respect to the Debtors and their property located in the United States pursuant to § 1520(a)(1). Arndt Geiwitz and Patrick Wahren are recognized as the foreign representatives of LACOM and Kiener, respectively. The Commencement Orders are given full force and effect pursuant to § 1521(a), with the proviso that nothing about recognition or enforcement of the Commencement Orders will impose a stay from German law that does not already exist in the absence of recognition. The Court sees nothing in the Commencement Orders themselves that create or discuss a stay. The evidence presented at the hearing was that there is no worldwide litigation stay under German law, and the Administrators opened the door to litigation when they disputed Mrs. Bass claims in the German Insolvency Proceedings. The Commencement Orders cannot be used to argue some additional stay under German law not in existence before recognition or in addition to the

17

automatic stay under § 362. Finally, the Court declines to extend any relief granted in the Provisional Orders or any other relief under § 1521. The Debtors did not put on any evidence or argument that they need the Holt Demand to be tolled further or make any request for specific relief that does not automatically apply under § 1520.

D.    **The Stay Is Lifted to Allow the District Court Litigation to Proceed**.

With the Petitions recognized and the automatic stay imposed, the Court turns to Mrs. Bass's requests for relief from the stay. Mrs. Bass requests relief from the stay to continue with the District Court Litigation to judgment, pursue collection from the insurance policy, and pursue collection against the German insolvency estates. In short, she seeks complete stay relief to pursue her claims in whatever manner possible.[13]

Relief from the automatic stay may be granted for "cause." 11 U.S.C. § 362(d)(1). Although "cause" is not defined by the Bankruptcy Code, this Court uses a three-prong balancing test to determine whether to grant relief from the stay to pursue litigation in a non-bankruptcy forum:

> 1. Whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit;

---

[13] The Debtors argue in a footnote that Mrs. Bass's stay relief motions are premature because the stay is not imposed until recognition occurs, and the stay relief motions were filed before recognition. Although they are technically correct, the Court sees little reason to delay consideration of the stay relief motions or to require Mrs. Bass to re-file her motions, which would undoubtedly contain the exact same arguments and issues. The issues relevant to stay relief were fully briefed and argued at the Recognition Hearing, the Debtors had ample notice and opportunity to oppose the stay relief motions, and nothing about the parties' arguments or evidence relative to stay relief depended on recognition occurring first (other than the need for stay relief in the first place). Other courts have granted stay relief simultaneously with an order recognizing a foreign main proceeding, *see In re ABC Learning; In re Sivec Srl*, Case No. 11-80799-TRC, 2011 LEXIS 3206 (Bankr. E.D. Okla. Aug. 18, 2011), and the Court sees no reason it should not do so here.

    2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

    3. The probability of the creditor prevailing on the merits.

*E.g., In re Video Cassette Games, Inc.*, 108 B.R. 347, 349 (Bankr. N.D. Ga. 1989) (citing *In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986)). The Debtors bear the burden of proof on all issues related to stay relief other than the issue of the Debtors' equity in property, which is inapplicable in this case. 11 U.S.C. § 362(g).

    Although the Debtors argue stay relief would be contrary to the purpose of chapter 15 and negate any recognition of these chapter 15 cases, they have not argued or supplied any authority suggesting that the Court should use a different rubric to analyze stay relief in the context of chapter 15 other than the three factors listed above. On the contrary, the Debtors argue those three factors in their briefs, and other courts analyzing stay relief in chapter 15 under similar circumstances have used the same or similar factors. *See In re ABC Learning*. That said, cross-border insolvency issues and the purpose of chapter 15 certainly weigh significantly into the Court's consideration of whether to grant stay relief.

    Indeed, because the U.S. Congress has made it clear that wrongful death claims and personal tort injuries cannot be tried or liquidated in a bankruptcy court, *see* 11 U.S.C. § 157(b), if this were not a chapter 15 bankruptcy case the question would not be *if* Mrs. Bass is entitled to stay relief but only *when*. When a debtor has sold its assets, is winding down its affairs, and litigation costs are being funded by insurance, the Court would almost certainly find, without much trouble, that stay

19

relief is appropriate. All the Debtors' arguments about cost of litigation, excess judgments, unavailability of witnesses, and the like, would be irrelevant.

The only reason the Court finds the question before it somewhat difficult is because the Debtors and their insolvency estates are in Germany, and these are chapter 15 cases. The Court is mindful of the purposes of chapter 15, comity with foreign insolvency proceedings, the general principle that claims against a debtor are usually best handled in a single forum, and similar concerns. But the Court also keeps in mind that these principles are not without limits, and chapter 15 provides the Court substantial discretion to fashion relief appropriate to individual cases.

Although the Court has declined to find recognition of the German Insolvency Proceedings is manifestly contrary to U.S. public policy, these cases directly implicate several important U.S. policies. Mrs. Bass will be deprived of her constitutional right to a jury trial if the District Court Litigation is indefinitely stayed and she is forced to liquidate her claims in Germany. To what extent the right to a jury trial is a fundamental public policy may be open to debate, but the Court will not ignore it.

As mentioned above, Congress clearly excepts liquidation of personal injury tort and wrongful death claimants from the otherwise strong policy favoring resolution of creditor claims in a single insolvency forum, and even if forced to liquidate her claims in Germany, such litigation would not be done in the German Insolvency Proceedings but a different forum entirely.

Bankruptcy and the automatic stay generally are not designed to protect a debtor's insurance carrier (or any other non-debtors) from the claims of creditors

unless specifically provided under the Bankruptcy Code.[14] The Court finds that the primary beneficiary of these chapter 15 cases and a permanent stay of the District Court Litigation would be the Debtors' insurance carrier, not the Debtors' insolvency estates. The Court can fashion stay relief to minimize the legitimate risks to the German insolvency estates while not sanctioning the use of the Bankruptcy Code to protect an insurance carrier.

Finally, the Court will not overlook the simple reality of Mrs. Bass's claims and the strong interests of the United States and the State of Georgia to be the forum to liquidate Mrs. Bass's claims. Her husband was killed in Georgia. The equipment that allegedly killed her husband was operating and presumably sold by LACOM into the stream of commerce in Georgia. The Debtors are subject to the jurisdiction of courts in Georgia. Most of the witnesses are in Georgia. The Debtors have actively participated in the litigation for four years in Georgia. The Administrators actively participated in litigation for nearly a year—in Georgia.

Meanwhile, the benefits of these chapter 15 cases to Debtor's insolvency estates appear to be minimal. The Debtors have no assets in the United States to protect. They are not operating at all and are winding up their affairs. The Debtors' insolvency estates are not paying the cost of litigating Mrs. Bass's claims and have a

---

[14] *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509–10 (3d Cir. 1997) ("[I]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." (quoting *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir. 1983))); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) indicates that it stays only proceedings *against* a 'debtor'—the term used by the statute itself.") (emphasis in original); *Metropolitan Life Insurance Co. v. Alside Supply Center of Knoxville (In re Clemmer)*, 178 B.R. 160, 167 (Bankr. E.D. Tenn. 1995) (holding that an insurance company was not authorized to enforce the stay). *Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024).

substantial insurance policy to pay those costs and any judgment ultimately obtained. The insurance policy has no value to the German insolvency estates other than to pay out on Mrs. Bass's claims and litigation costs. There is no apparent stay from Germany that prevents the liquidation of Mrs. Bass's claims in the District Court Litigation, and German law will have the ultimate say about the enforceability of a U.S. judgment.

The Court finds that the State of Georgia and the United States have a strong interest in the liquidation of Mrs. Bass's claims in a court in Georgia pursuant to Georgia and United States law that, at a minimum, counterbalance issues of cross-border insolvency at play in this case. With that in mind, the Court now turns to the three-factor test.

1. <u>Neither the Debtors nor their insolvency estates will suffer any great prejudice from continuation of the District Court Litigation</u>.

The Debtors make three arguments regarding prejudice to them if the District Court Litigation is not stayed. The primary argument is that the cost of litigation in the District Court, together with appeals, followed by subsequent litigation in Germany to domesticate a U.S. judgment, which could result in the invalidation of a U.S. judgment and force Mrs. Bass to file a new declaratory judgment action in Germany, could take years and erode the policy limits to a point where the insolvency estates are at increased risk of an excess judgment.

On the one hand, the Court finds some merit to this position. Mrs. Bass's counsel testified that he has not considered foregoing collection efforts against the insolvency estates, and the stay relief motion contemplates collection against the

insolvency estates. Debtors' expert on German law confirmed that domestication of a U.S. judgment could be subject to attack under German law for various reasons.

On the other hand, the Debtors' arguments seem somewhat overblown and manufactured when carefully considered from the perspective of the insolvency estates. The Debtors and their insolvency estates are not shouldering any costs of litigating Mrs. Bass's claims, so the cost of litigation does not create any direct prejudice for the Debtors or their estates. It is only the indirect possibility of a judgment in excess of the insurance limits that poses any real risks to the estates. But if things play out as the Debtors argue, and a U.S. judgment is not recognized and Mrs. Bass is ultimately forced to liquidate her claims in the German civil courts, the end result would be a German judgment in the thousands of dollars instead of millions. Even in the litigation hellscape painted by the Debtors, it is hard to imagine that the policy would erode to the point that it could not cover a judgment for thousands of dollars, and the Debtors offered no evidence that the policy limits are in danger of drying up anytime soon.

If a U.S. judgment is not invalidated by German law, then the Debtors' arguments ring hollow in the first place, and there's the rub. The real issue here does not appear to be the possibility that a U.S. judgment will be invalidated in Germany after years of litigation, but that it will be upheld in Germany under similar principles of international comity.

The Debtors also briefly argue that the delay in resolving Mrs. Bass claims prevents distribution and recovery of assets to other creditors. Although an excessive

23

amount of delay could be prejudicial to the Debtors' insolvency estates and their other creditors, delay is inevitable even under the Debtors' preferred course. A declaratory judgment action in Germany could take 1.5 to 2 years on average, without accounting for appeals, and such an action would have to start afresh if the District Court Litigation is stayed indefinitely. Meanwhile, the District Court Litigation is nearly ready for trial after four years of litigation.

Further, the Court finds the evidence lacking on this issue. The Debtors put on no evidence regarding the length of time the Debtors' insolvency estates might otherwise need to wrap up in the absence of Mrs. Bass's claims, or any specific prejudice to other creditors caused by litigation delays in the United States. The Debtors stated in their briefing that Kiener has over 1,000 creditors and LACOM over 100. It is hard to imagine that Mrs. Bass's claims are the only outstanding issues remaining, and the Debtors' expert suggested the cases are still reasonably recent. What is the normal length of time for cases the size of the Debtors' to reach final distribution? The Court does not know, but the Court does not find the mere possibility of additional delay for final distribution to create great prejudice to the Debtors.

Finally, the Debtors argue that they will suffer immense prejudice because they will not be able to compel certain European witnesses to testify at a trial in the United States now that the Debtors are no longer operating, which would prevent them from putting on an effective defense at trial in the United States. Debtors argue that several of their key witnesses were employees of the Debtors, and the only way

24

to ensure that they testify in the United States would be through their employers requiring it. Now that the Debtors are no longer operating, the Administrators and Debtors have no way to ensure those witnesses attend trial in the United States. They further argue that compelling the witnesses to sit for a deposition for purposes of preserving evidence for use at trial is difficult under German law, and that although the witnesses were already deposed, the depositions were taken prior to the German Insolvency Proceedings, and the Debtors' counsel strategically chose not to ask questions at the depositions for purposes of preserving evidence for trial.

Although the Court appreciates that a trial in the United States might create some difficulties on this front, the Court is not convinced that the Debtors have no ability to preserve evidence from the European witnesses to use at trial. Mrs. Bass, however, would experience similar problems liquidating her claims in Germany, as the majority of witnesses deposed in the District Court Litigation are in the United States, and it seems equally likely that many of Mrs. Bass's witnesses in the United States would similarly be unavailable for trial in Germany. Ultimately, the Court is not convinced the European witnesses are impossibly out of reach for the Debtors, and even if the Debtors suffer some prejudice in this regard, the Court finds the prejudice to be less than the reciprocal prejudice to Mrs. Bass if she is required to liquidate her claims in Germany.

2. Hardship to Mrs. Bass substantially outweighs hardship to the Debtors

The hardship to Mrs. Bass will be substantial if she is not allowed to continue in the District Court. She will lose her Constitutional right to a jury trial. She will

lose the benefit of four years of litigation in the District Court Litigation, where discovery is complete, summary judgment motions are pending a court ruling, and trial is near. She will have to start over in Germany in a process that is likely to take an average of 1.5 to 2 years. She will have to retain counsel in Germany who will be unfamiliar with her case. It is unknown if she would have the financial resources to retain German counsel to represent her, but certainly her financial resources pale in comparison to the Debtors' insurance carrier. Her U.S. counsel works on contingency and covers the cost of litigation, which are several hundred thousand dollars to date. She would have many of the same issues the Debtors complain of regarding availability of witnesses and difficulty with trying a case in a foreign country, but certainly the burden on an individual tort claimant attempting to try a case in a foreign country is substantially more than an insolvency estate funded by a multimillion-dollar insurance policy. The court finds the harm to Mrs. Bass substantially outweighs the asserted harm to the Debtors, particularly when the Court can grant limited stay relief to protect the Debtors' estates.

3. Mrs. Bass has a probability of success on the merits

Finally, the Court considers the probability that Mrs. Bass will succeed in 1) obtaining a judgment against the Debtors in the District Court Litigation and 2) enforcing that judgment against the insurance policy. The Court considers only enforcement against the insurance policy because the Court is not granting stay relief to pursue recovery against the Debtors' insolvency estates at this time. Even a slight probability of success on the merits may be sufficient to support lifting the automatic

26

stay in an appropriate case. *In re ABC Learning*, 445 B.R. at 338 (citing *In re SCO Group, Inc.,* 395 B.R. 852, 859 (Bankr. D. Del. 2007); *Int'l Business Machines v. Fernstrom Storage & Van, Co. (In re Fernstrom Storage & Van Co.),* 938 F.2d 731, 737 (7th Cir.1991); *Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 578 (Bankr. D. Del. 1992). The Court finds Mrs. Bass has a strong probability of success to obtain a judgment against the Debtors in the District Court Litigation. Mrs. Bass summarizes her claims and evidence in a lengthy settlement letter addressed to defendants in the District Court Litigation. Suffice to say her claims appear to have significant merit, even though the Debtors and other defendants may have strong defenses, and the value of her claims could turn out to be substantially less than she and her counsel have asserted.

The Court also finds Mrs. Bass has at least some probability of success to domesticate a judgment in Germany and recover on the insurance proceeds. Although the Debtors have argued extensively about litigating the domestication of a U.S. judgment in Germany and invalidating a judgment for various reasons, the Court is unconvinced. The Debtors citations to German or other relevant European law are not well-developed or explained with clarity, and the Court finds them unpersuasive. Many of the issues appear to be procedural hurdles that Mrs. Bass would need to address but that are not preclusive. The testimony at the hearing, and thus the evidence, focused on general principles of German policy prohibiting punitive and excessive damages—which are not yet known—not any tenant of insolvency law or other German law that would preclude domestication of a U.S. judgment under the

27

circumstances. It is apparent to the Court that, although Mrs. Bass may have some difficulty in ultimately collecting against the insurance in Germany, it is far from impossible, and on the facts of this case the Court finds that sufficient.

Balancing the three factors, the Court easily concludes that relief from the automatic stay is appropriate to allow Mrs. Bass to liquidate her claims in the District Court Litigation and seek collection of any judgment against the Debtors' insurance carrier.  To the extent that creates a risk of prejudice to the Debtors through erosion of the policy limits, the Court will limit stay relief at this time to allow collection efforts only to the extent necessary to pursue recovery under the insurance policy but not allow collection against the German insolvency estates absent further order of the Court. To the extent German law creates difficulties for Mrs. Bass to collect against the insurance carrier under such limitations, Mrs. Bass may seek additional relief from the Court.

**Conclusion**

For the foregoing reasons

**IT IS ORDERED** that the Petitions are GRANTED. The Debtors' German Insolvency Proceedings are recognized as foreign main proceedings.

**IT IS FURTHER ORDERED** that the respective Commencement Orders are hereby imposed, applied, recognized, and enforced, as the case may be, in these chapter 15 cases, provided that nothing in the Commencement Orders stays the District Court Litigation to any extent not already stayed under German law prior to any order of this Court enforcing the Commencement Orders.

28

**IT IS FURTHER ORDERED** that no relief provided in the Court's Preliminary Orders is continued for any purpose.

**IT IS FURTHER ORDERED** that Mrs. Bass's Motions for Stay Relief are **GRANTED IN PART** as set forth herein. The automatic stay under 11 U.S.C. § 362(a) is hereby modified to allow the District Court Litigation to continue to conclusion, including all appeals, and Mrs. Bass may pursue collection efforts on any judgment obtained in the District Court Litigation solely to obtain recovery against any insurance policy of the Debtors that cover Mrs. Bass's claims. Mrs. Bass may not pursue recovery against the German insolvency estates without further order of this Court.

The Clerk's Office is directed to serve a copy of this Order upon counsel for the Debtors and Foreign Representatives, counsel for the District Court Plaintiffs, the United States Trustee, and any counsel that has filed a notice of appearance in this case.

**END OF DOCUMENT**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| In re: | Chapter 15 |
|---|---|
| Kiener Maschinenbau GmbH | Case No. 24-56470-JWC |
| **Debtor in a Foreign Proceeding.** | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2024, I filed the foregoing *Notice of Appeal* ("Notice") with the Clerk of the Court using the Court's Electronic Case Filing program, which generates a notice of and accompanying link to the filing to those parties registered to receive electronic notices in this case:

- **Louis G. McBryan**    lmcbryan@mcbryanlaw.com, alepage@mcbryanlaw.com
- **Jason L Pettie**    jpettie@taylorenglish.com

I also certify I caused true and correct copies of the foregoing document to be served on the following parties and the attached mailing matrix, adequate postage prepaid:

*Via U.S. Mail and Via Email:*
Phyllis Ann Bass, individually and as
Executor of the Estate of Roy Glenn
Bass
c/o Slappey & Sadd, LLC
352 Sandy Springs Circle
Atlanta, GA 30328
jay@lawyersatlanta.com
michael@lawyersatlanta.com

This 30th day of September, 2024.

JONES & WALDEN LLC

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Ave NE
Atlanta, Georgia 30308
Telephone:   (404) 564-9300
Facsimile:   (404) 564-9301
cmccord@joneswalden.com
*Counsel for Debtor and*
*Foreign Representative*

Label Matrix for local noticing
113E-1
Case 24-56470-jwc
Northern District of Georgia
Atlanta
Mon Sep 30 13:31:13 EDT 2024

Kiener Maschinenbau GmbH
Ulm Comm. Register No. HRB 510071
Anton-Grimmer Str. 2
Lauchheim 73466
 Germany

United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303-3315